IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

AMERICU CREDIT UNION,

                Plaintiff,

                                      Civ. Action No.
                                      6:06-CV-1348 (DEP)

      vs.

CUMIS INSURANCE SOCIETY, INC.,

                Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

NASTO LAW FIRM             JOHN A. NASTO, JR. , ESQ.
4957 Commercial Drive
Yorkville, NY 13495

FOR DEFENDANT:

PETRONE, PETRONE LAW FIRM    DAVID H. WALSH, IV, ESQ.
1624 Genesee Street
Utica, NY 13502

BALLARD, SPAHR LAW FIRM     F. JOSEPH NEALON, ESQ.
601 13th Street, NW              JEFFREY W. LARROCA, ESQ.
Suite 1000 South               JENNIFER E. LATTIMORE, ESQ.
Washington, DC 20005-3807

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

The parties to this action, which is otherwise trial ready and before me on consent of the parties pursuant to 28 U.S.C. § 636(c), have entered into an oral agreement to settle the case based upon payment by the defendant of a specific monetary amount.  Negotiations conducted by the parties' representatives in an effort to draft and execute an acceptable written document embodying the terms of a fully integrated settlement agreement, however, have proven unsuccessful.

Believing that the parties have entered into a binding settlement, defendant now seeks an order enforcing the agreement.  Plaintiff opposes that application, arguing that because the parties did not intend to be bound by the settlement terms until reduced to a writing accepted and executed by the parties, and no such agreement has been signed, defendant is not entitled to the relief requested.

Because I find, based upon consideration of the facts surrounding the parties' settlement discussions, that while having tentatively agreed to settle the action neither party intended to be bound by the terms of the settlement until it was reduced to writing and executed by the parties, and no written agreement in resolution of the case was ever accepted and

2

signed by both parties, I will deny defendant's motion.

I.      BACKGROUND

        A.      Circumstances Surrounding The Action

        Plaintiff AmeriCU Credit Union ("AmeriCU") commenced this action in New York State Supreme Court on or about September 29, 2006.  The genesis of the suit was a loss suffered by AmeriCU as a result of the acts of one of its employees and the alleged failure of defendant Cumis Insurance Society, Inc. ("Cumis") to properly indemnify AmeriCU for the shortfall in accordance with existing insurance policies under which Cumis provided coverage to the plaintiff.  Cumis subsequently removed the action to this court on November 6, 2006, urging diversity of citizenship as a basis for the court's jurisdiction in the matter, pursuant to 28 U.S.C. § 1332.

        Following the denial on April 25, 2008 of a summary judgment motion filed by Cumis, the action was deemed trial ready and the parties were directed to report to the court by June 30, 2008 with proposed trial dates.  Notwithstanding that trial ready status, Cumis requested and was granted leave to file a motion to amend and/or correct its answer to add a counterclaim.  That motion was subsequently filed on May 20, 2008, and

made returnable on July 9, 2008.

          B.    The Parties' Settlement

    On or about June 26, 2008, attorneys for the respective parties
orally agreed to settle the action based upon payment by Cumis of
$50,000 in settlement of all the claims in the case.   Upon achieving the
settlement Jennifer E. Lattimore, Esq., an attorney for Cumis, drafted and
e-mailed to plaintiff's counsel, John A. Nasto, Esq. a proposed written
settlement agreement on the afternoon of that same date.  During an
ensuing telephone conference, held on June 30, 2008, Attorney Nasto
requested that Attorney Lattimore revise two provisions, including the
"Whereas" clause on the first page and the "release of claims" language
on the second, in order to reflect that the agreement was limited only to
the facts involved in this case.

    After making the requested changes, Attorney Lattimore forwarded a
revised draft of the agreement to AmeriCU's counsel on June 30, 2008.
On the following day, Attorney Nasto telephoned requesting further
revision of the same two clauses, proposing language which was
subsequently incorporated by Cumis into yet another iteration of the
agreement.  The second revised agreement was e-mailed to Attorney

4

Nasto on July 1, 2008, with an indication that Cumis had authorized

acceptance of the document, as redrafted.  Contemporaneously with that

action, and with assent from AmeriCU's counsel, Cumis wrote to the court

on July 1, 2008 requesting permission to withdraw its pending motion to

amend.  That request was granted, and the motion was removed from the

court's calendar.

On July 8, 2008, not having heard further from AmeriCU regarding

the settlement, Attorney Lattimore e-mailed Attorney Nasto to inquire

concerning the status of the matter.  In response, Attorney Nasto

telephoned defendant's counsel to advise that his client would not agree

to a settlement which did not include a waiver of subrogation provision

similar to a clause included in prior agreements between the parties, but

which was not included in the existing draft settlement agreement.  During

the course of that conversation, Attorney Nealon admitted that he had

overlooked the omission of such a provision and had accordingly failed to

raise it in prior discussions regarding the settlement agreement drafting

process.

II.    PROCEDURAL HISTORY

With permission from the court, Cumis moved on July 25, 2008 for

an order enforcing the settlement agreement between the parties.  Dkt.

No. 54.  In papers filed on August 8, 2008, AmeriCU has both opposed

defendant's motion and cross-moved seeking a declaration from the court

that in the event the case is deemed to have been settled, the merger

provision of the parties' agreement overrides any subrogation obligation

arising out of the relevant insurance policies.  Dkt. No. 55.  In its

opposition to defendant's motion, AmeriCU asserts that while there was a

tentative settlement reached, through their actions the parties manifested

an intention not to be bound by its terms until it was reduced to writing and

executed by the parties, additionally arguing that because the subrogation

rights related to the agreement would likely extend beyond the period of

one year, proof of the parties' oral agreement is precluded by New York's

Statute of Frauds, N.Y. General Obligations Law § 5-701(a).

III.    DISCUSSION

Plaintiff's claims in this action, sounding principally in breach of

contract, arise under New York Law.  Accordingly, New York Law

principles inform analysis of whether there was a binding, enforceable

settlement agreement in the case which the court must now enforce.[1,2]

---

[1]      This determination appears to have little if any legal significance, in light
of the fact that federal common law and New York State principles governing

*See Silas v. City of New York*, 536 F. Supp. 2d 353, 357-58 (S.D.N.Y. 2008).

_____Under New York Law, parties to litigation may permissibly bind themselves orally to terms of a settlement.  *Ciaramella v. Reader's Digest Association, Inc.,* 131 F.3d 320, 322 (2d Cir. 1997); *Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80 (2d Cir. 1986).  The fact that the agreement is not written does not necessarily preclude its enforcement, nor does the mere intention of the parties to reduce the agreement to writing negate a finding that an enforceable contract has been formed. *Ciaramella*, 131 F.3d at 322; *Winston*, 77 F.2d at 80; *see also Church of God of Prospect Plaza v. Fourth Church of Christ of Brooklyn,* 76 A.D.2d 712, 715, 431 N.Y.S.2d 834, 837 (2d Dep't 1980) (noting that " . . . when the parties have agreed on all contractual terms and have only to commit them to writing. . . . the contract is effective at the time the oral agreement is made, although the contract is never reduced to writing and signed").

---

interpretation and enforcement of settlements do not appear to differ materially. *Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320, 322 (2d Cir. 1997); *see also Powell v. Omnicom, BBDO/PHD,* 497 F.3d 124, 129 n.1 (2d Cir. 2007).

[2]     This finding is fully consistent with the draft agreement proposed by Cumis, which specified that New York law should govern its interpretation and enforcement.

7

As an exception to this general rule, where parties have manifested an intent not to be bound until an agreement is reduced to writing and executed, their oral agreement is not binding.  *Ciaramella,* 133 F.3d at 322; *Winston,* 777 F.2d at 80.  The question of whether, in reaching a settlement, parties to litigation have effectively reserved the right not to be bound until the settlement is reduced to writing and executed is a question of fact, to be determined based upon the totality of the relevant circumstances.  *Ciaramella,* 131 F.3d at 322.

The Second Circuit has fashioned a four factor test to guide courts in determining whether the requisite intent not to be bound is demonstrated.  *Ciaramella,* 131 F.3d at 323.  Under that test, courts addressing the issue should consider

> (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* (citing *Winston,* 777 F.2d at 80); *see also Powell v. Omnicom, BBDO/PHD*, 497 F.3d 124, 129 (2d Cir. 2007).  As the Second Circuit noted in *Ciaramella*, "[n]o single factor is decisive, but each provides

8

significant guidance." 131 F.3d at 323.

1.    Express Reservation

As was the case in *Ciaramella,* there are several indicators of the parties' intent not to be bound until the settlement terms had been fully ventilated, and both reduced to writing and signed.  While the parties were able to agree upon the monetary component of the settlement, there is no indication in the record now before the court that the verbal agreement achieved on or about June 26, 2008 addressed any other material terms included within the subsequently created draft agreements, including the timing of payment and exchange of releases, as well as confidentiality. The record also discloses a clear understanding to the effect that Cumis would not make payment, or even draft a settlement check, until a written agreement had been executed by AmeriCU.[3]  While under the terms of the agreement payment was to be made by check on or before July 15,

_____

[3]    As AmeriCU has observed, Attorney Lattimore's e-mail communication dated July 8, 2008 confirms this fact, providing as follows:

> Have you been in touch with [Attorney Nealon] regarding the settlement agreement?  Has it been executed?  Please let me know as soon as possible because the client needs a few days to get the check issued to us so we can get it to you by the [date specified in the agreement].

Lattimore Decl. (Dkt. No. 54-2) Exh. 6.

9

2008, there is no evidence in the record that Cumis has tendered such a check, thereby fortifying the finding that the parties did not intend to be bound until an agreement had been executed.  Moreover, in language paralleling that found significant by the Second Circuit in *Ciaramella,* the agreement drafted by counsel for Cumis ends by providing as follows:

> IN WITNESS WHEREOF, *and intending to be legally bound,* the Parties hereby execute this Agreement as of the date first set forth above.

Lattimore Decl. (Dkt. No. 54-2) (emphasis added).

Considering the totality of these circumstances, I conclude that this factor favors a finding that the parties did in fact effectively reserve their intention to be bound until execution of a final settlement document.

### 2.    Partial Performance

There has been no partial performance of the settlement's terms in this case.  While, as previously indicated, the draft written agreement called for payment by Cumis of the agreed upon settlement amount on or before July 15, 2008, that payment was not made.

Cumis argues that its letter to the court withdrawing the pending motion to amend its answer represents partial performance.  The draft agreement prepared by attorneys for Cumis, however, while making

10

reference to the filing of a stipulation of dismissal upon release of settlement funds, does not contain a provision requiring the withdrawal of its motion to amend.  The withdrawal of the motion was made based upon the fact of the parties' tentative agreement to settle the case, and does not evince an intention on the part of the parties to be bound notwithstanding the lack of a signed written agreement.  This factor, then, also favors a finding of an intent not to be bound by the parties' oral agreement.

### 3.   Terms Remaining to Negotiated

This factor similarly weighs in favor of a finding that through their actions the parties manifested an intent not to be bound by their tentative agreement until a written settlement document had been prepared and executed.  While the parties did agree on the amount to be paid by Cumis in settlement of the action, there is no indication in the record that other material terms ultimately included in the draft agreements prepared by counsel for Cumis were discussed and agreed upon, nor does the oral agreement, which was not entered into in open court, have any of the trappings of a fully integrated oral settlement agreement.  This factor, then similarly favors AmeriCU.

### 4.   Type of Agreement That is Usually Reduced To a Writing

11

The fourth and final relevant factor focuses upon the nature of the agreement and issue and whether it is of the type typically reduced to writing.  The agreement at issue in this case was to be in settlement of contested litigation.  As the Second Circuit has observed, such agreements, particularly when negotiated out of court and not stated on the record, are of the type normally expected to be reduced to writing. *Powell*, 497 F.3d at 130-3; *Ciaramella,* 131 F.3d at 326.  This factor, then, heavily favors AmeriCU.

Despite the strong indicia of the parties' intent not to be bound until a final settlement agreement was drafted and signed, Cumis places heavy reliance upon the apparent agreement of AmeriCU's counsel to the revised draft agreement forwarded on July 1, 2008, maintaining while there may not have been an enforceable contract reached on June 26, 2008, counsel's agreement on July 1, 2008 to the written terms proposed now binds the plaintiff.

The position now espoused by Cumis is directly contrary to controlling authority in this circuit, including *Ciaramella.*  In that employment discrimination action the parties entered into settlement negotiations, which ultimately ripened into an agreement in principle to

12

settle the action. 131 F.3d at 321. The parties' attorneys then set about the process of negotiating a written settlement agreement and, following revisions to the original draft, plaintiff's lawyer announced "[w]e have a deal." *Id.* After consulting with new counsel, however, the plaintiff refused to sign the final settlement agreement despite his previous lawyer's representation that its terms were acceptable. *Id.* Interpreting defendants' efforts to enforce the settlement agreement as "fashion[ing] a federal rule of decision that . . . would hold parties to an oral settlement whenever their attorneys arrive at an agreement on all material terms", the Second Circuit responded by soundly rejecting the assertion. *Id.* at 322-23 (footnote omitted). In arriving at that determination the court observed that such a rule would conflict with federal policy, additionally noting that

> [e]nforcing premature oral settlements against the expressed intent of one of the parties will not further a policy of encouraging settlements. People may hesitate to enter into negotiations if they cannot control whether and when tentative proposals become binding. We therefore decline to adopt a federal rule concerning the validity of oral agreements that is in conflict with federal policy and the settled common law principles of contract law.

*Id.* at 323.

13

IV.   <u>SUMMARY AND CONCLUSION</u>

Having carefully considered the four factors which inform the court's analysis under the *Winston-Ciaramella-Powell* protocol, I conclude that through their actions the parties, while having tentatively settled this action, unequivocally manifested an intent not to be bound by the terms of the settlement until it was reduced to writing and executed by the parties. Accordingly, there being no evidence to suggest that such a final writing was both agreed to *and* executed by the parties, I will deny the motion of Cumis and restore the case to the trial calendar.[4]

It is therefore hereby ORDERED as follows:

1)    Defendant's motion to enforce the settlement (Dkt. No. 54) is DENIED;

2)    Plaintiff's cross-motion for declaratory relief is DENIED, as academic;

3)    This case is hereby restored to the court's trial ready calendar, with leave to the defendant to renew its motion to amend on or before September 5, 2008; and

---

[4]    In light of this ruling, I find it unnecessary to address plaintiff's Statute of Frauds argument, as well as its cross-motion seeking declaratory relief.

14

4)      A telephone conference will be conducted by the court on September 11, 2008 at 2:30 p.m. to address the remaining issues and to schedule both a hearing date for defendant's contemplated motion for leave to amend and for trial.  Plaintiff's counsel is hereby directed to initiate the call pursuant to the court's established procedures.

Dated:      August 21, 2008
            Syracuse, NY


_____
David E. Peebles
U.S. Magistrate Judge